O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SACV 12-0921-JGB (ANx) | Date | October 8, 2014 |
|---|---|---|---|
| Title | *John Constantino v. Aetna Life Insurance Co., et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **FINDINGS OF FACT AND CONCLUSIONS OF LAW (IN CHAMBERS)**

A bench trial was scheduled to commence on August 13, 2013. This Employment Retirement Income Security Act ("ERISA") action concerns the termination of Plaintiff John Constantino's long term disability ("LTD") benefits, pursuant to Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Plaintiff seeks recovery of long term disability benefits under an ERISA-governed benefit plan ("Plan"), which is self-funded by Federal Express Corporation ("FedEx"). Aetna Life Insurance Company ("Aetna") operates as the administrator of claims made under the Plan.

On June 14, 2013, FedEx and Plaintiff each filed trial briefs. ("Def. Br." and "Pl. Br.," Doc. Nos. 30, 31.) On July 12, 2013, the Parties each filed responsive trial briefs. ("Def. Reply" and "Pl. Reply," Doc. Nos. 35, 34.) The Parties agreed that no witnesses were to be called at trial. (Doc. No. 14.) Upon reviewing the Parties' trial briefs and the Administrative Record ("AR"), the Court determined that argument was unnecessary for decision on this matter. Therefore, the Court vacated the bench trial. (Doc. No. 37.)

### I. FINDINGS OF FACT

"In bench trials, Fed. R. Civ. P. 52(a) requires a court to 'find the facts specially and state separately its conclusions of law thereon.'" Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir. 1986) (quoting Fed. R. Civ. P. 52(a)). "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision. This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate

conclusions." Id. (citations omitted). The following constitutes the findings of fact based on the Administrative Record.

The Plan is self- funded by FedEx, and Aetna operates as the administrator of claims made under the Plan. (AR 370.) The Plan provides that FedEx maintains a trust for the purpose of paying benefits under the Plan. (AR 448.) FedEx's contributions to the Plan are irrevocable and cannot be used to inure to FedEx's benefit. (AR 448.) Under the Plan, eligibility for long-term disability benefits requires that an employee satisfy the requirements for an "occupational disability" or "total disability." (AR 373.) To qualify for an occupational disability, the claimant must be prevented from doing his own job at FedEx because of his disability. Under an occupational disability, LTD benefits are payable for up to 24 months. (AR 371, 373, 416-17.) After 24 months, a claimant must have a total disability in order to continue receiving benefits. To qualify for total disability, the claimant must be completely unable to perform the duties of any compensable employment for 25 hours per week because of a medically-determinable physical or functional impairment. (AR 281, 373, 420.)

Plaintiff John Constantino began working for FedEx as a Senior Aviation Maintenance Technician on December 18, 2008. (AR 136.) On July 5, 2009, Plaintiff was involved in a motorcycle accident. (AR 29.) He was treated at U.C. Irvine for a mangled right hand and fractured pelvis. (AR 29, 77.) In July 2009, Plaintiff underwent two surgeries on his right hand to repair multiple fractures, as well as surgical repair of his pelvis. (AR 33, 52-55, 77-80.) Plaintiff remained hospitalized until July 22, 2009, when he was moved to a rehabilitation facility. (AR 38.) He remained at the rehabilitation facility for occupational therapy until August 5, 2009. (AR 58.) On December 30, 2009, Kimberly Arsi, D.O., who worked at Dr. Hool's practice, filled out a Multiple Impairment Questionnaire indicating that: Plaintiff was limited to sitting, standing, and walking one hour per eight-hour workday; Plaintiff's lifting and carrying was limited to 20 pounds; Plaintiff had significant limitations in repetitive reaching, handling, fingering, and lifting; and Plaintiff's symptoms would likely increase if he were placed in a competitive work environment. (AR 14-21.)

Plaintiff was approved for Short-Term Disability Benefits, payable from July 13, 2009 through January 10 2010. In January 2010, Aetna found that the exam findings supported functional impairment from Plaintiff's occupation, and the claim was anticipated to transition to LTD. (AR 170.)

On July 19, 2011, Aetna sent Plaintiff a letter informing him that he needed to provide medical documentation that clearly showed significant objective findings, defined as signs which are noted on a test or medical exam and which are considered significant anatomical or physiological abnormalities which can be observed by a practitioner, that substantiate total disability, to continue to qualify for benefits beyond January 10, 2012. (AR 95.) On October 13, 2011, Aetna sent Dr. Hool a letter asking him to mark whether Plaintiff could work at any compensable employment for a minimum of twenty-five hours a week. (AR 94.) Dr. Hool marked that Plaintiff was unable to work at any compensable employment for a minimum of twenty-five hours a week. (Id.)

Aetna had Dr. Blumberg, an orthopedic surgeon, complete a physician review of Plaintiff's file. (AR 97.) The written report was prepared on November 1, 2011. (AR 98.) Dr.

Blumberg found that "[b]ased on the provided documentation, the claimant does not have a functional impairment that would preclude any compensable employment for more than 25 hours per week," and there were no current physical examination findings to support impairment, specifically, there were no range of motion testing in degrees, motor strength testing, or neurologic findings. (AR 98.) Additionally, Dr. Blumberg found that there was no evidence the claimant could not stand, sit, ambulate, or lift up to 10 pounds. (AR 98-99.)

On December 1, 2011, Aetna notified Plaintiff that his claim for disability benefits beginning January 11, 2010 had been reviewed and it had been determined that no benefits were payable to Plaintiff for his claim beyond January 1, 2012. (AR 5.) The letter notified Plaintiff that there were no current physical exam findings that substantiated his inability to perform sedentary activity, demonstrated a significant decrease in motor strength or coordination, documented severe spasticity or muscle wasting, or evidenced that he could not stand, sit, or lift up to ten pounds. (AR 5.) Additionally, it stated that Plaintiff could appeal the decision within 180 days, and the appeal review would consist of a fresh review of his claim based on information already existing in his file, along with any additional information, records, documents, comments, or relevant material he submitted in support of the appeal. (AR 6.)

Plaintiff submitted a written appeal to Aetna on December 9, 2011. (AR 7.) With the written appeal, Plaintiff submitted an office visit note from Plaintiff's November 7, 2011 visit with Dr. Zamorano, which stated that the radiographs showed a second screw was potentially broken in his pelvis and noted that Plaintiff had some swelling and tenderness in his groin area on the right side. (AR 23.) Plaintiff also submitted a May 9, 2011 examination report that found that there was a minimally displaced fracture of the second to right metallic screw through the right pubic tubercle, there was no evidence of hardware loosening, and no new acute displaced bony fracture. (AR 22.)

On January 24, 2014, Aetna sent Plaintiff a letter informing him that an extension of time was needed to complete clarification of the peer review and ensure a full and fair review of the appeal claim. (AR 101.) Dr. Cirincione conducted the physician review on appeal and signed the report on January 13, 2012. (AR 102.) He reviewed: Dr. Blumberg's 11/1/11 peer review; x-rays dated 7/5/2009, 7/15/2009, 7/18/2009, 11/7/11; Dr. Zamorano's 7/15/09 operative report; Deanna Lawson's 7/22/19 discharge summary; Dr. Arisi's 12/30/09 multiple impairment questionnaire; the 12/29/09 office note from Manchester Plastic Surgery; the 12/29/09 office note from University Physicians & Surgeons; Dr. Zamorano's 1/4/10 and 7/11/11 office notes; the 1/4/10 work/school status report from the Department of Orthopedic Surgery; x-ray reports dated 1/4/10, 5/24/10, 5/9/11; Dr. Hool's office notes from 10/11/10, 1/18/11, 2/17/11; Dr. Hool's 10/18/11 letter; an 11/7/11 office note from the UCI Orthopedic Center; and the Plan language. (AR 102-103.) Dr. Cirincione also stated in his report that he spoke with Dr. Hool on January 10, 2012 and asked Dr. Hool whether Plaintiff had functional impairments that would preclude him from performing 25 hours of work a week minimum. Dr. Hool responded that he had not seen Plaintiff since July and would contact Plaintiff for a reevaluation, but he had no opinion at the time. (AR 104.) Dr. Cirincione concluded from his review that there were no records that supported Plaintiff's ability or inability to perform duties of 25 hours a week at any occupation, and prior to Dr. Hool's re-examination, there were no physical examination findings that would continue to support Plaintiff's level of impairment. (AR 104.)

On January 24, 2012, Dr. Cirincione performed a Physician Review Addendum, during which he reviewed the additional documentation submitted, including Dr. Zamorano's November 7, 2011 office note. (AR 106-109.) Dr. Cirincione concluded that the finding of the broken screw did not change his opinion, there was no evidence of any true instability, and he believed Plaintiff could engage in some duties 25 hours a week. (AR 109.)

On February 6, 2012, Aetna sent Plaintiff a letter notifying him that the Committee voted to uphold the denial of total disability benefits. (AR 1-2.) Dr. Hool did not complete a re-examination of Plaintiff prior to the Committee's decision.

## II. CONCLUSIONS OF LAW[1]

**A.  Standard of Review**

Under ERISA, a beneficiary or plan participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2006). The Court reviews benefits denials de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits"; if the plan does grant such discretionary authority, the Court reviews the administrator's decision for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Salomaa v. Honda Long Term Disability Plan, 637 F.3d 958, 965 (9th Cir. 2011). "[A] deferential standard of review does not mean that the plan administrator will prevail on the merits." Conkright v. Frommert, 559 U.S. 506, 521 (2010). Rather, "[i]t means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" Id. An ERISA plan administrator's decision to deny benefits is an abuse of discretion "only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir. 2005).

Here, the benefits are paid by FedEx, and Aetna is the claims-paying administrator. The Plan grants Aetna the discretionary authority to interpret the Plan's provisions and determine factual matters of eligibility. Therefore, the Parties agree that the Court should apply the abuse of discretion standard. (Pl. Br. 6; Def. Br. at 14.)

### 1. Conflict of Interest

Where the administrator of the benefits plan has a conflict of interest, the abuse of discretion review is further modified and the Court must review the benefits decision "skeptically." A conflict of interest arises where the same entity makes the coverage decisions and pays for the benefits. This dual role always creates a conflict of interest, but it is "more

---

[1] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

important . . . where circumstances suggest a higher likelihood that it affected the benefits decision." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108, 117 (2008). The conflict is less important when the administrator took active steps to reduce potential bias and to promote accuracy, such as employing a "neutral, independent review process," or segregating employees who make coverage decisions from those who deal with the company's finances. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 969 n. 7 (9th Cir. 2006) (en banc). The conflict is given more weight if there is a "history of biased claims administration." Glenn, 554 U.S. at 117. The review of the administrator's decision is also tempered by skepticism if the administrator gave inconsistent reasons for a denial, failed to provide full review of a claim, or failed to follow proper procedures in denying the claim. (citations omitted). Harlick v. Blue Shield, 656 F.3d 832, 839 (9th Cir. 2011).

Plaintiff argues that the relationship insurers have with vendors and their reviewing physicians may create an incentive for vendors to reach results that are favorable to the insurer in order to sustain their business relationship, and it can be reasonably inferred that Aetna has an incentive to reach favorable results for FedEx and a structural conflict of interest exists. (Pl. Br. at 7-8.) Plaintiff is correct that some courts have found that in a situation such as this one, the relationship between the insurer and the vendor creates an incentive for the vendor to reach results that are favorable to the insurer. See Kurth v. Hartford Life and Accident Ins. Co., 845 F. Supp. 2d 1087, 1096 (C.D. Cal. 2012) (holding that the "nature of [Hartford's] relationship with the vendors and their reviewing physicians creates an incentive for the vendors to reach results that are favorable to [Hartford] in order to foster and sustain their business relationship."); Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003) (citing with approval the lower court's observation that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements"). However, the record here lacks evidence to establish that Aetna's financial bias tainted its decision making process. In fact, the record shows that FedEx has taken active steps to prevent any potential risk of bias. For example, the LTD Plan is funded by a trust, contributions to which are irrevocable by FedEx. (AR 448-49.) Because Plaintiff has failed to provide any evidence of a conflict of interest, the Court does not discount the deference accorded to the administrator decision and applies the abuse-of-discretion standard without enhanced skepticism. See Meguerditchian v. Aetna Life Ins. Co., No. 12-10999, 2014 WL 684688 (C.D. Cal. Feb. 21, 2014); Riffey v. Hewlett-Packard Co. Disability Plan, No. 05-1331, 2007 WL 946200 (E.D. Cal. Mar. 27, 2007); Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294, 365 (E.D.N.Y. 2013).

### 2. Procedural Violations

ERISA requires plan administrators to follow certain practices when processing and deciding plan participants' claims. See 29 C.F.R. § 2560.503–1; Abatie, 458 F.3d at 971. The standard of review may be heightened, even up to the point of de novo review, where "an administrator engages in wholesale and flagrant violations of the procedural violations of ERISA." Abatie, 458 F.3d at 971. Under ERISA, administrators must follow certain practices in processing and deciding claims. Id. Failure to comply with procedures does not usually justify de novo review. Id. When an irregularity exists, the Court should weigh it in determining whether the administrator abused its discretion. Id. In order to determine the extent of the

violation, the Court may consider evidence outside of the record. Id. If "wholesale and flagrant" violations exist, less deference is warranted. Id. at 971. If the administrator's actions "fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted." Id. at 972. "Procedural violations that are less than 'wholesale and flagrant' constitute a factor in determining whether a plan administrator abused its discretion." Skeen v. Rite Aid Corp., No. 08- 03177, 2010 WL 231383, at *6 (E.D. Cal. Jan. 12, 2010).

Plaintiff argues that Aetna did not comply with 29 C.F.R. § 2560.503–1(g), which provides that when rejecting a claim for benefits, the plan administrator must provide written or electronic notification that sets forth, "in a manner calculated to be understood by the claimant . . . "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. (Pl. Br. at 13-15.) The Ninth Circuit has described this regulation as encouraging "meaningful dialogue between ERISA plan administrator and their beneficiaries." Booton v. Lockheed Medical Ben. Plan, 110 F.3d 1463, 1463 (9th Cir. 1997). Relying on Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863 (9th Cir. 2008), Plaintiff specifically contends that Aetna should have informed Plaintiff in its January 24, 2012 letter that Dr. Hool told the peer reviewer that a reevaluation was necessary before he could opine as to whether Plaintiff had functional impairments that would preclude him from performing 25 hours of work a week minimum. (Mot. at 15.) In Saffon, the Ninth Circuit found that the claims administrator disregarded its responsibility to have meaningful dialogue with the beneficiary in various ways, including by communicating with her doctors without advising her of the communication. 522 F.3d at 873 ("If a claims administrator communicates with a doctor who has treated a beneficiary, it must disclose that fact to the patient at a meaningful time."). While Aetna's failure to inform Plaintiff that it communicated with Dr. Hool may have been a procedural violation, in light of the other detailed information Aetna provided, the Court does not find that Aetna's overall communication rises to the level of violating ERISA-mandated procedures in a "wholesale and flagrant" manner. See Abatie, 458 F.3d 955, 971-72 (9th Cir. 2006) ("When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity."). Therefore, the appropriate standard of review remains abuse of discretion.

B.    **Abuse of Discretion**

      1. **Vocational Assessment and Evaluation of Plaintiff's Educational Background and Work Experience**

Plaintiff contends that Aetna abused its discretion by failing to obtain any vocational assessment or conduct an evaluation of Plaintiff's educational background and work experience. (Pl. Br. 9-12.) The Ninth Circuit has held that "consideration of vocational evidence is unnecessary where the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent him from performing some identifiable job." McKenzie v. General Tel. Co. of California, 41 F.3d 1310, 1317 (9th Cir. 1994) (adopting the principle court decides "on a case-by-case basis, whether under the particular facts the plan administrator abused its discretion by not obtaining the opinion of a vocational rehabilitation expert").

Aetna responds that a vocational assessment and evaluation of Plaintiff's educational background and work experience were not required because the Plan language does not contain such requirements. (Def. Reply at 8.) The Court has reviewed the Plan and is unable to find such requirements. Additionally, there is evidence in the administrative record that Plaintiff's job requirements were taken into consideration. Plaintiff's file included a job description, describing the knowledge, skills, and abilities required of a senior aviation maintenance technician. (AR 108-109.) In the clinical file review in November 2011, Dr. Blumberg also noted that Plaintiff's occupation was a Federal Express Senior Aviation Mechanic Technician and that there were no physical examination findings to support that Plaintiff had a functional impairment that would preclude any compensable employment for more than 25 hours per week; there was no evidence the claimant could not stand, sit, ambulate, or lift up to 10 pounds. Dr. Blumberg concluded that Plaintiff was capable of any occupation/sedentary employment for more than 25 hours per week. (AR 98-99.) In the subsequent clinical file review in January 2012, Dr. Cirincione noted that Dr. Hool agreed that at that time there were no records that would support impairment, noting that there was no evidence of muscle strength, muscle atrophy, range of motion, gait status, antalgic, or whether he uses assistive devices. (AR at 104.) Aetna defined compensable employment as a sedentary job for 25 hours per week. (AR at 94.) Therefore, the Court finds that the lack of a vocational assessment does not weigh in favor of finding an abuse of discretion here. Cannon v. Aetna Life Ins. Co., No. 12-10512, 2013 WL 5276555 (D. Mass. Sept. 17, 2013) ("Given the lack of impairment or restrictions on [the plaintiff's] ability to work based upon the record before the reviewing physicians, there was no need for a vocational review. That is, the record did not demonstrate that [the plaintiff] would be unable to perform any physical level of work; therefore Cannon certainly would be able to perform the material duties of his own occupation. Accordingly, Aetna's failure to conduct a vocational review does not establish that Defendants' actions were arbitrary and capricious with respect to the final claim determination.") (citation omitted).

### 2. Aetna's Review

"An administrator's reliance on a paper review does not, standing alone, require the conclusion that the plan administrator acted improperly." Patrick v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 638 F. Supp. 2d 1195, 1213-14 (S.D. Cal. 2009) (citation and internal quotation marks omitted). There is no requirement in ERISA that the claims administrator order an in-person independent medical examination of a claimant, and consulting physicians' opinions based on reviews of medical records are an acceptable basis of an administrator's determination. See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 879-80 (9th Cir. 2004) (plan administrator, in accepting opinion of "reviewing physician" over opinion of plaintiff's treating physicians, did not abuse discretion); see also Kushner v. Lehigh Cement Co., 572 F. Supp. 2d 1182, 1192 (C.D. Cal. 2008) (ERISA does not require an independent medical examinations). However, "the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." Calvert v. Firstar Finance, Inc., 409 F.3d 286, 295 (6th Cir. 2005).

While it might be an abuse of discretion in some circumstances for the claims administrator to fail to order an independent medical examination of a claimant, where there is no objective support for the claimed disability, the administrator may elect not to conduct an

independent medical examination. See Manning v. American Republic Ins. Co., 604 F.3d 1030, 1041 (8th Cir. 2010) (ERISA plan administrator is not required to order an independent medical examination when the claimant's evidence is facially insufficient to support a finding of disability); Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 91 (2nd Cir. 2009) (where ERISA plan administrator retains discretion to interpret terms of plan, administrator may elect not to conduct independent medical examination, particularly where claimant's medical evidence on its face fails to establish disability); Williams v. Aetna Life Ins. Co., 509 F.3d 317, 325 (7th Cir. 2007) (finding reasonable a denial of benefits where the ERISA plan administrator refused to order an independent review and there was a lack of "objective support" regarding the claimant's "functional abilities"). Here, Dr. Blumberg and Dr. Cirincione evaluated the medical evidence submitted by Plaintiff and his physicians and found that the evidence failed to establish that Plaintiff was functionally impaired from performing any compensable employment because his injuries did not preclude sedentary work. They noted that there were no significant objective findings before them that would preclude Plaintiff from performing the elements of compensable occupation. Plaintiff did present evidence of a second broken screw, which Dr. Cirincione considered. (AR 109.) However, he found, based on Dr. Zamorano's examination and the x-rays, that there was no evidence of any true instability and his opinion that Plaintiff could engage in some employment for a maximum of 25 hours per week was not changed. (Id.) Aetna was entitled to credit the medical opinions of Dr. Blumberg and Dr. Cirincione, and did not abuse its discretion in doing so. See Ramos v. Bank of Am., 779 F. Supp. 2d 1058, 1075-76 (N.D. Cal. 2011).

### 3. Award of Social Security Disability Income

Plaintiff further contends that Aetna knew that Plaintiff had been awarded Social Security Disability Income ("SSDI"), and Aetna did not consider his SSDI benefits in making the decision to terminate his LTD benefits. Any Social Security Administrator's ("SSA") contrary determination should be considered as a factor in an ERISA plan's decision to deny benefits. Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 635 (9th Cir.). "While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was the product of a principled and deliberative reasoning process. In fact, not distinguishing the SSA's contrary conclusion may indicate a failure to consider relevant evidence." Id. at 635 (citing Glenn v. MetLife, 461 F.3d 660, 669 (6th Cir. 2006); Glenn, 554 U.S. at 123). "Ordinarily, a proper acknowledgment of a contrary SSA disability determination would entail comparing and contrasting not just the definitions employed but also the medical evidence upon which the decisionmakers relied." Id. at 636; see also Salz v. Standard Ins. Co., 380 F. App'x 723, 724 (9th Cir. 2010) ("A proper administrative process will meaningfully discuss a claimant's award of social security benefits . . . [and] analyz[e] the distinctions between the basis for the two awards."). "*Montour* does not, however, resolve the issue" of a non-conflicted administrator which neglected to review a claimant's SSDI benefits. Kludka v. Qwest Disability Plan, No. 08-1806, 2012 WL 1681983, at *9 (D. Ariz. May 14, 2012).

The Ninth Circuit has long held that such an award is not binding on a plan administrator in an ERISA case. Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1285 (9th Cir. 1990). The test for Social Security disability is different than that required under ERISA because the SSA is obligated to apply "the treating physician rule" which requires that greater weight be

given to the opinions of a treating physician unless rejected by specific substantial evidence in the record. Butler v. Shoemake, 173 F.Supp.2d 1069, 1076 (D. Or. 2001). However, the mere fact that the SSA uses a different methodology "alone does not provide a basis for disregarding the SSA's determination." Montour, 588 F.3d at 636. Here, Aetna's February 2012 denial letter acknowledges that Plaintiff was receiving SSDI, Aetna's request for Plaintiff to forward all medical information that was submitted to substantiate his SSDI claim in the December 2011 denial letter, and notations in Plaintiff's file that he was awarded SSDI in August 2010, there is no mention in the record indicating that the reviewers or Aetna took the SSA's decision awarding benefits into account. (See AR 2, 3, 6, 293.) However, unlike cases in which courts have found that a lack of consideration of the receipt of SSDI benefits have weighed in favor of finding that the plan administrator abused its discretion in denying benefits, Aetna is not a structurally conflicted administrator, Aetna informed Plaintiff that he should forward all evidence supporting his SSDI claim, it is not clear that Aetna disregarded the award of SSDI benefits, and there is no record that Aetna denied benefits subsequent to a near-contemporaneous contrary SSA determination. See e.g., Montour, 588 F.3d at 637 (noting that the administrators initial decision did not advise the plaintiff that further documentation regarding the SSA disability determination would facilitate review), Salomaa, 642 F.3d at 676 (noting that claimant provided administrator with the SSA award, but there was no evidence the plan administrator considered it); Saffon, 522 F.3d at 871 ("Insofar as [Hartford] believed that" additional documentation establishing the reasoning and evidence underlying the SSA's disability determination "was necessary for it to evaluate [Montour]'s claim," it should have said so "at a time when [Montour] had a fair chance to present evidence on this point."). However, Therefore, the Court does not find that Aetna's consideration of the SSDI benefits in reaching its decision weighs in favor of abuse of discretion.

### 4. Meaningful Dialogue

As discussed above, ERISA regulations call for a "meaningful dialogue" between the claims administrator and the beneficiary. See Saffon, 522 F.3d at 870. A plan administrator is required to give the beneficiary a description of any additional material or information that is necessary for him to perfect the claim, and to do so in a manner calculated to be understood by the claimant. Id. Plaintiff's contention that Aetna did not engage in meaningful dialogue rests primarily on the fact that he was not notified that Dr. Hool told the reviewing physician, Dr. Cirincione, that he needed to reevaluate Plaintiff before providing an opinion regarding whether Plaintiff was capable of any compensable employment, and Aetna did not follow-up with Dr. Hool. (Pl. Br. at 14-15.)

The administrative record reveals that Aetna diligently sought updated records for review, contacting Plaintiff's physicians, including Dr. Hool, multiple times. In the December 2011 denial letter, Aetna outlined the information considered and specifically explained why there was no evidence to support that Plaintiff would not be able to engage in any compensable employment for a minimum of 25 hours per week in a sedentary position, as well as provided examples of evidence Plaintiff could submit in support of an appeal that would perfect his claim. (AR 5-6.) Additionally, Aetna advised Plaintiff that it had contacted Dr. Hool to see if he would participate in the peer consultation, and it was waiting to hear back from him. (AR 309.) While the Court is concerned with Aetna's failure to communicate to Plaintiff that Dr. Hool stated that he needed to reexamine Plaintiff to form an opinion, the Court does not find that this alone

substantiates a finding that Aetna abused its discretion. Unlike other cases which found that the plan administrator abused its discretion, Aetna did not fail to seek or pass along evidence that was readily available, it does not appear that Aetna's decision was primarily based on Dr. Hool's statement but, rather, a holistic view of the records, and Aetna described what information it needed to perfect Plaintiff's claim. Compare with Salomaa, 642 F.3d at 680 (finding abuse of discretion where the administrator did not provide the plaintiff with the physicians' evaluations on which the denial was primarily based); Booton v. Lockheed Med. Ben. Plan, 110 F.3d 1461, 1453-64 (9th Cir. 1997) (finding abuse of discretion where the plaintiff's dentists were ready and able to provide explanations of their work, but the plan administrator did not seek this relevant information); Saffon, 522 F.3d at 870-71.

"Procedural errors by the administrator are . . . weighed in deciding whether the administrator's decision was an abuse of discretion." Salomaa, 642 F.3d at 674. Under an abuse of discretion review, the Court is required to uphold the plan administrator's decision if it is reasonable. Conkright, 559 U.S. at 521; see also Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997) (under the abuse of discretion standard, an ERISA plan administrator's decision should be upheld if it is based upon a reasonable interpretation of the plan's terms and was made in good faith). Here, the evidence in the administrative record, including Plaintiff's medical records and the findings of Aetna's medical experts, can support a finding that Plaintiff did not qualify for total disability under the Plan terms. Aetna's decision was not, therefore, "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." Salomaa, 642 F.3d at 676. The Court is not "left with a definite and firm conviction" that Aetna made a mistake in denying Plaintiff's LTD benefits. Id.

### III. CONCLUSION

Based on its findings of fact and conclusions of law, the Court concludes that Aetna did not abuse its discretion in denying Plaintiff's long-term disability claim. Defendants are entitled to have judgment entered in their favor.[2]

**IT IS SO ORDERED.**

---

[2] Defendants argue that Defendant Aetna Life Insurance Company has been misjoined. However, because the LTD Plan's denial of Plaintiff's benefits was not an abuse of discretion, the argument is now moot, and the Court does not consider the argument here. See Smith v. Fed. Exp. Corp. Long Term Disability Plan, 991 F. Supp. 2d 992, 998 (W.D. Tenn. 2014).